UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

STEPHEN WYCHE,

      Plaintiff,

v.                                    ACTION NO. 4:13CV43

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Stephen Wyche seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance under Title II of the Social Security Act. 42 U.S.C. §§ 401 – 433. He alleges only one error, a claim that the ALJ and Appeals Council improperly weighed a Veterans Administration (VA) finding that he was completely disabled. After reviewing the parties' briefs, the cases cited and the complete Administrative Record, the undersigned concludes that this allegation of error, which arises from a recent decision by the Fourth Circuit, mandates remand to permit the ALJ to re-evaluate both Wyche's VA disability rating and the post-hearing evidence submitted to the Appeals Council. Accordingly, this report

recommends that the final decision of the Commissioner be vacated and the matter remanded for further review.

## I.  PROCEDURAL BACKGROUND

On November 9, 2010, Wyche filed an application for disability insurance benefits ("DIB") alleging disability beginning April 24, 2008.  (R. 147-53).  The Commissioner denied his application initially (R. 99-103), and upon reconsideration. (R. 108-14). Wyche requested an administrative hearing, which was conducted on July 20, 2012.  (R. 47-72).

Following the hearing, an Administrative Law Judge ("ALJ") concluded that Wyche was not disabled within the meaning of the Social Security Act, and denied his claim on August 1, 2012. (R. 18-34). Wyche submitted a brief and additional evidence to the Appeals Council which denied review of the ALJ's decision on January 29, 2013 (R. 1-7), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), Wyche filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II.  FACTUAL BACKGROUND

Wyche, an army veteran, was born in 1963 and was 47 on the date of his alleged onset.  (R. 147).  He graduated high school

and completed two years of college.  (R. 186).  He served as a petroleum specialist in the Army, hauling fuel during combat operations in the first Gulf War.  (R. 321).  After discharge, he held positions in food service, telemarketing and briefly ran his own janitorial company.  (R. 29, 174).  He last worked fulltime in 2008 and, as a result, his date last insured for disability insurance benefits was June 30, 2012.  (R. 154).

Wyche has both physical and mental impairments, including a right leg problem resulting from a surgically-repaired fracture, Post-Traumatic Stress Disorder ("PTSD"), and substance abuse issues.  With regard to his right leg and ankle, Wyche underwent surgery with placement of a rod to repair a fracture after an accident on his moped.[1]  (R. 511, 407).  While healing from his first surgical repair, x-rays revealed that one of the screws had loosened and as a result, Wyche underwent a second surgery to replace the screw. (R. 407). The record after the second surgery appears to show he was healing as expected from the second repair.  The last medical reports are shortly prior to his date last insured and reflect Wyche would soon begin weight-bearing as appropriate on his repaired right ankle.  (R. 413-15).

---

[1] As the ALJ and Commissioner point out, Wyche gave inconsistent descriptions of the circumstances of his injury, at one point telling his psychiatrist that he had injured his leg while playing with his grandchildren.  (R. 504).

3

Most of the medical record, however, is devoted to Wyche's diagnosis of PTSD as well as his treatment for substance abuse, including alcohol and marijuana. In 2009 he presented to the VA with complaints of difficulty "dealing with anger and stress." (R. 314). His history on that date described his military service in the first Gulf War, including handling "fuel while under fire." He served in a port city which was "constantly under SKUD fire with Patriots firing back." He also reported being exposed to dead bodies along the main highway. (R. 314). As a result of these events, he related that he had a depressed mood most days, and tended to isolate himself, except for church and family. He also reported anger outbursts, an increased startle reflex, and hyper-vigilance. He denied suicidal ideations, but endorsed "intermittent [homicidal ideation] without plan or intent toward no one in particular."

Among the symptoms he described were feelings of guilt, worthlessness, racing thoughts, easy distractibility, and impulsivity – particularly when using drugs. He denied manic symptoms and stated that he felt emotionally connected to his mother, daughters, and extended family. He enjoyed playing the drums and reported fair energy, and good concentration. (R. 314-15). His mental status exam on that date revealed that he was

4

cooperative and pleasant, and did not appear tense or guarded during the interview. His speech was normal and coherent with no evidence of "acute psychotic symptoms." He denied current hallucinations, but his thought content was noted for "intrusive thoughts of the traumatic experience, hyper-vigilance and mistrustfulness." (R. 316). His mood was diagnosed as "depressed" with constricted affect, but his insight and judgment were intact as were his working memory, short term recall and semantic memory. (R. 316).

During this initial detailed review conducted by VA physician, Ryan Ingram, his doctor wrote, "I cannot rule in or rule out PTSD at this time because of his significant substance dependence and Cluster B traits from a young age." Dr. Ingram directed further follow-up but started medication, including Seroquel for "significant mood lability and anger outbursts." (R. 317).

Shortly after this visit Wyche was incarcerated, serving 13 months for an incident in which he shot at a van parked in front of his mother's house. On June 25, 2010, Wyche returned to the VA and consulted with Dr. Naheed Saleem for follow-up of his PTSD. His chief complaint on that date was recorded as "nightmares, flashbacks, recurrent intrusive thoughts, social

isolation, avoidance, hyper-vigilance, exaggerated startle response, depressed/anxious/irritable mood, relationship difficulties with others." But Wyche reported that his mood had been fair. He described his previous period of incarceration along with a court-ordered anger management counseling. His mental status exam again revealed him to be cooperative with no evidence of psychotic symptoms. His affect was appropriate and insight and judgment unimpaired. Dr. Saleem diagnosed Wyche with chronic PTSD, alcohol dependence, and cannabis dependence in remission. (R. 308). He continued his current medications of Risperdal, increased his dosage of Wellbutrin and directed a follow-up in two months. (R. 308).

Thereafter, the Record contains another treatment gap between July, 2010 and January, 2011. The VA first rated Wyche disabled for PTSD effective June 25, 2010. (R. 439). The Record before the ALJ includes an explanation of his benefits, but no detail concerning the medical records relied upon by the VA, or the reasons for its decision.

In February, 2011, Wyche presented to Dr. Chris Lindemann, a psychologist, for a consultative examination. Wyche described his symptoms to Dr. Lindemann, reporting nightmares two to three times per week, and triggers such as cars backfiring or doors

6

slamming, which caused him to "hit the floor." (R. 338). He stated that he would hallucinate or have flashbacks of approximately three to five minutes. Dr. Lindemann also reviewed Wyche's prior history and performed a mental status exam on that date; he found his thought process goal-directed and coherent, but his perceptual experiences were not normal. He described hearing voices and having nightmares. His mood was depressed. Dr. Lindemann described his judgment as "historically poor with limited insight," but stated he had a good attitude toward the examination and cooperated as well as possible in order to present himself well. (R. 340).

Dr. Lindemann also diagnosed PTSD with alcohol and cannabis dependence, as well as major depression. With the exception of his reports of hearing voices, which Dr. Lindemann found "suspect", he noted that his test data, self-report and documented history were all consistent but found that his "antisocial personality disorder, alcoholism, marijuana use, and criminal behavior undermine the credibility of the claim." Dr. Lindemann found his prognosis "not good" as a result of his previous noncompliance with treatment and noted that VA's inpatient programs for PTSD were conditioned on sobriety. Nonetheless, he believed that if Wyche could abstain from

illegal drugs and alcohol, "his recovery from PTSD would have a fighting chance" and the Claimant would have "much better odds" of finding gainful employment. Dr. Lindemann endorsed a variety of functional behaviors including performing moderately detailed and complex tasks, maintaining a regular schedule, performing work without special or additional supervision and interacting cooperatively and productively with coworkers and the public, all of which were conditioned upon Wyche remaining sober. (R. 340-41).

In March 2011, Wyche returned to Dr. Saleem at the VA. (R. 357-67). His chief complaints continued to be nightmares, flashbacks, recurrent intrusive thoughts, social isolation, avoidance, hyper-vigilance, exaggerated startle response and a depressed anxious, irritable mood, as well as relationship difficulties with others. (R. 363). Dr. Saleem diagnosed chronic PTSD and noted that Wyche had had an irritable mood, and was involved with fights with others. He noted that he lost his job as a clerk in a Newport News Inn, was having difficulty sleeping and not tolerating his Risperdal well. In his mental status exam, Dr. Saleem noticed that Wyche was cooperative, with no evidence of psychotic symptoms and no suicidal or homicidal ideation, a euthymic mood and appropriate affect, judgment and

insight.  He discontinued Risperdal and increased his dose of Wellbutrin and reinstituting Seroquel and directed a two month follow-up.  (R. 363).

In April 2011, State agency psychologist Daniel Walker reviewed Wyche's records, including Dr. Lindemann's report, and opined that he was not disabled.  (R. 81).  Dr. Walker observed that Wyche would be moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in close proximity with others, and complete a normal work day and work week.  (R. 70-80). Nonetheless, he concluded that Wyche's symptoms were exacerbated with drinking and that he maintained the ability to perform his past relevant work.  (R. 79, 82).

In July 2012, Wyche was charged with DUI while operating his moped.  (R. 487, 489).  As a result, he was required to attend substance abuse treatment where he was active in group discussions and open about sharing with other group members. (R. 483, 484, 486).  Wyche also returned to Dr. Saleem for follow-up on his chronic PTSD.  He described benefiting from substance abuse treatment by learning coping strategies and not using substances to control his anger, but still reported difficulty being around others.  (R. 480).  His mental status

exam was unchanged from March and he was diagnosed with chronic PTSD, depressive disorder not otherwise specified and alcohol dependence and cannabis dependence in remission. Dr. Saleem continued both Wellbutrin and Seraquel and ordered a follow-up in three months. (R. 481).

At the hearing before the ALJ Wyche testified that he was unable to work because of anger issues, paranoia and an inability to deal with authority. He described having nightmares about his combat service and flashbacks. (R. 56-57). He described dealing with the situation primarily by remaining at home, sleeping 14-16 hours a day. (R. 62).

The ALJ also solicited testimony from a Vocational Expert ("VE") who stated that based on the hypothetical framed by the ALJ Wyche could not perform his past work as a floor technician or telemarketer with a phone service company. (R. 65-66). However, when the ALJ framed a hypothetical reflecting the full range of light work with simple, routine, unskilled work, only occasional interaction with the public, co-workers, supervisors and low stress, the VE testified that such an individual could perform work as a housekeeper, assembler of small products and unskilled office clerk. She also testified that all of these positions had jobs in significant numbers in the national

economy, and that her testimony was consistent with the Dictionary of Occupational Titles. (R. 67). In response to a second hypothetical, the VE testified that if this same individual were unable to interact with the general public, co-workers and supervisors due to anger issues, and would be off task more than 20% of the time due to flashbacks and traumatic experiences, no work would be available. In addition, the VE testified that unexcused absences would be limited to less than two days per month and an employee who regularly required more than two scheduled 15 minute breaks and a 30 minute to one hour lunch would not be able to perform work. (R. 68).

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305 U.S.

197, 229 (1938)). It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ). Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application

for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. §§ 1382a and 1382b, must also satisfy the basic eligibility and definitional requirements found in 42 U.S.C. §§ 1382(a) and 1382c.

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions

13

which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hays v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)).  At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

### 1.  ALJ's Decision.

In this case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Wyche met the insured status requirements of the Act through his date last insured (DLI) of June 30, 2012; (2) He had not engaged in substantial gainful activity since November 30, 2008, the alleged onset date; (3) Wyche had severe impairments of degenerative joint disease, status post (S/P)fracture repair, PTSD, alcohol and cannabis dependence; (4) his combination of impairments did not meet one of the listed impairments in Appendix 1; (5) Wyche had the RFC to perform a limited range of light work, limited to low stress work, with no more than occasional interaction with the public, co-workers and supervisors.  Finally, although the ALJ

15

concluded that Wyche could not perform his past relevant work, using the Grid Rules as a framework, he did identify jobs which exist in substantial numbers in the national economy which Wyche could perform. (R. 25-30).

In his Motion for Summary Judgment in this Court Wyche alleges only one error, the Commissioner's failure to afford his VA disability rating substantial weight. He has not argued for an award of benefits in this Court, rather he seeks remand to the ALJ for analysis of the rating in light of the recent Fourth Circuit precedent. For the reasons set forth in detail below this report concludes that this post-hearing change in Fourth Circuit precedent mandates remand for the ALJ to perform a more detailed analysis of Wyche's VA disability rating. Because this analysis may affect the ALJ's other findings concerning Wyche's RFC and ability to work, the undersigned makes no finding or recommendation concerning the ALJ's original conclusions on those issues.

2. **The Commissioner's final decision did not adequately evaluate evidence of the VA's prior finding that Wyche was completely disabled in light of new Fourth Circuit precedent requiring that the VA's finding be given "substantial weight."**

At the time of the hearing, Wyche had been awarded a 70% disability rating and "individual unemployability" from the VA

as a result of his PTSD. However, at the hearing the ALJ received very little evidence to establish a basis for the VA's decision. Prior to the hearing Wyche submitted a letter describing his VA disability benefits. The letter recites that Wyche was found 70% disabled due to a service-connected diagnosis of PTSD. (R. 444). The letter refers to an attached VA rating document which was to provide a "detailed explanation of [the] decision, the evidence considered, and the reasons for [the] decision." (R. 444). But the rating decision was not in the record before the ALJ. In fact, the letter includes no discussion of the medical evidence supporting the VA's decision, or the rationale supporting either the percentage of disability or the award of benefits. At the hearing, Wyche also testified that he was receiving disability. (R. 53). In fact, he described both the initial 70% determination and the expected later increase to 100%. Id.

In his opinion, the ALJ noted that Wyche had received a VA disability rating, but concluded, without quantifying the rating, that it "is given little weight here." In explaining this assessment, the ALJ observed only that the standards for the award of VA disability benefits are "not directly comparable to the sequential evaluation process," and "are not indicative

of disability for purposes of this agency." (R. 28).

At the time of the hearing, Social Security regulations required the ALJ to consider decisions by other governmental agencies related to the claimant's disability. Although not binding, the regulations suggest that the ALJ should "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." Williams v. Astrue, No. 5:11cv286, 2012 WL 3240467, at *9 (E.D.N.C. Apr. 4, 2012) (unpublished) (citing SSR 06-03P). In this case, the ALJ's brief explanation may have been adequate in light of the evidence in the record before him concerning the VA's determination, and Fourth Circuit precedent at the time. See Williams, 2012 WL 3240467 at *9; Barnett v. Astrue, No. 3:10cv1316, 2012 WL 75046, at *16 (S.D. W. Va. Jan. 10, 2012) ("When comparing the standards for establishing disability promulgated by the SSA to the less exacting standards employed by the VA, the ALJ's decision to give 'little weight' to the VA's determination is entirely reasonable.").

18

After the ALJ released his opinion, however, the Fourth Circuit decided _Bird v. Commissioner of Social Security_, 699 F.3d 337 (4th Cir. 2012). The new opinion held that the SSA must give "substantial weight" to a VA disability rating. _Id._ at 345. Like _Williams_, the _Bird_ opinion acknowledged that the SSA and VA apply different standards, but also noted that "both serve the same governmental purpose of providing benefits to persons unable to work because of a severe disability," and both require extensive medical documentation. _Id._ at 343. As a result, a disability rating by one of the two agencies is "highly relevant to the disability determination of the other." _Id._ The opinion also recognized, however, that the "SSA employs its own standards for evaluating a claimant's alleged disability, and [ ] the effective date of coverage . . . under the two programs will likely vary." _Id._ As a result, even under the new rule, the Commissioner may give less weight to a VA rating "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." _Id._

Citing this new rule, and post-Bird decisions from almost every District Court within the Fourth Circuit[2], Wyche's brief argues that Bird requires remand.  Given the ALJ's finding that Wyche had only a limited light RFC with fairly extensive limitations due to his mental condition, he argues that Bird's mandate to afford his VA disability rating "substantial weight" may result in an award of benefits.  The Commissioner does not agree.  She argues that the ALJ's very detailed analysis of the medical record accounted for his disagreement with the scant evidence before him of the VA's rating.  Acknowledging that Wyche submitted a more detailed summary of the VA rating to the Appeals Council, the Commissioner nonetheless argues that the more detailed evidence was not sufficient to undermine the ALJ's conclusion, or warrant further explanation.  Finally, the

---

[2] At this writing, more than ten different district and magistrate judges have opined that Bird requires remand to permit the ALJ to analyze a VA rating under the correct evidentiary standard. See Salazar v. Colvin, No. 1:10cv972, 2014 WL 486726, at *4 (M.D.N.C. Feb. 6, 2014); Cobbs v. Colvin, No. 1:12cv03472, 2014 WL 468928, at *8 (D.S.C. Feb. 4, 2014); Adams v. Colvin, No. 4:13cv39, 2014 WL 202564, at *1, 198 Soc. Sec. Rep. Serv. 709, 709 (E.D. Va. Jan. 15, 2014); Persaud v. Colvin, No. 2:12cv661, 2014 WL 198922, at *1 (E.D.Va. Jan. 14, 2014); Cotton v. Colvin, No. 1:12cv340, 2013 WL 4509710, at *2 (W.D.N.C. Aug. 23, 2013); Pavlovic v. Commissioner, Social Sec. Admin., No. SAG-12-2148, 2013 WL 2902802, at *1 (D.Md. Jun. 12, 2013); Herrien v. Astrue, No. 2:11cv560, 2013 WL 1121361, at *1 (E.D.Va. Feb. 21, 2013) report and recommendation adopted, No. 2:11cv560, 2013 WL 1057173 (E.D.Va March 13, 2013); Pusz v. Astrue, No. 2:11cv48, 2013 WL 498809, at *2 (W.D.N.C. Feb. 11, 2013); Suggs v. Astrue, No. 4:11cv128, 2013 WL 466406, at *3 (E.D.N.C. Feb. 7, 2013) (remanding under Bird because the ALJ failed to give substantial weight to plaintiff's Medicaid award); Phelps v. Astrue, No. 3:12cv492, 2012 WL 6803711, at *1 (E.D.Va. Dec. 10, 2012) report and recommendation adopted No. 3:12cv492, 2013 WL 83034 (E.D.Va. Jan. 7, 2013).

20

Commissioner contends that even if the ALJ erred, the error was harmless and does not require remand. After reviewing the post-hearing evidence and the ALJ's analysis, the undersigned agrees with Wyche that remand is necessary.

The Commissioner first argues that the ALJ's explanation of the weight assigned to the VA rating is adequate, notwithstanding the change announced in Bird. Reading the case narrowly, the Commissioner argues that it was really only directed to cases where the ALJ completely rejects a VA rating, and that as long as the ALJ has considered a VA rating, and the record can be construed to support the weight assigned, Bird is satisfied. Specifically, the Commissioner contends that the ALJ was not required to "articulate specific reasons nor utter any particular magic words," to explain why he afforded Wyche's disability rating less than substantial weight. (ECF No. 14 at 14).

The opinion in Bird imposed a new presumption of substantial weight which did not exist when the ALJ analyzed Wyche's claim. Contrary to the Commissioner's argument, this presumption was not directed only to cases where the ALJ overlooked or ignored a VA rating. In creating the new standard, the Fourth Circuit observed that it had not previously

21

addressed the precise weight the SSA must afford to a VA disability rating. Bird, 699 F.3d at 343. The Court then observed that other circuits have "afforded varying degrees of evidentiary significance to a disability determination made by the VA." Id. (citing McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) ("great weight"); Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1985) ("substantial weight")). After reviewing the similarities between VA determinations and SSA proceedings, the Court concluded that "substantial weight" was the appropriate degree of evidentiary significance to require. In its concluding paragraph the Court unequivocally restated the new rule: "we hold that a VA disability determination must be accorded substantial weight in Social Security disability proceedings." Because the regulations require the ALJ to "explain the consideration given to these decisions," the ALJ is now required to "explain" why he departed from "substantial weight." See Berry v. Astrue, 622 F.3d 1228, 1236 (9th Cir. 2010) (ALJ departing from substantial weight must give "specific, valid reasons for doing so that are supported by the record").

It bears mention also that the claimant in Bird, like Wyche, had received a 100% VA rating exclusively as a result of

PTSD. Like Wyche, Bird suffered from isolation, frequent nightmares, an exaggerated startle response, and flashbacks. Bird, 699 F.3d at 339. As a result, the Fourth Circuit observed that the VA rating decision "resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA." Id. at 343. Moreover, one of the primary distinguishing factors in Bird, the timing of his VA rating after DLI, is not present here. The evidence establishes that Wyche was 100% disabled according to the VA two years prior to his DLI of June 2012.

Notwithstanding this, the Commissioner argues that because the ALJ did examine the same medical evidence and reached a different conclusion on disability, this Court should presume that, on remand, he will depart from the substantial weight standard and again find Wyche not disabled. It is possible, had the ALJ been aware of the evidentiary presumption, he may well have articulated reasons why he reached a different conclusion on disability, but he did not know. As a result, his opinion, no matter how thorough, cannot be read so as to conclude that he intended to "deviate" from a standard which did not then exist. "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the

administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983). When an ALJ does not "articulate the bases for his conclusions," judicial review becomes "impossible." Id.

The Fourth Circuit has now made it clear that the ALJ must give the VA's disability determination "substantial weight." See Bird, 699 F.3d at 343. If the opinion does not, then it must be evident from the opinion itself why the ALJ departed from that standard. "[A] court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say." Nken v. Holder, 585 F.3d 818, 822 (4th Cir. 2009). The reasons cited by the ALJ in Wyche's case - a different standard "not indicative of disability for purposes of this agency" - would apply to every case and thus cannot be relied upon to avoid scrutiny of the VA's disability decision under Bird's new presumptive standard. See Berry, 672 F.3d at 1236 (fact that VA and SSA use different governing rules is not a basis to depart from "substantial weight"). Because the ALJ did not know to conduct this analysis, and did not in fact conduct it, the undersigned is unable to determine whether substantial evidence supports the ALJ's conclusion on the weight assigned to Wyche's VA rating.

Even if the ALJ's analysis could be sustained on the limited record before him, post-hearing evidence and a decision by the Appeals Council after Bird was decided would still require remand here.  As discussed, Wyche offered little explanation of his VA rating before the ALJ, but his representative submitted more detailed materials concerning the VA rating after the original hearing decision.  (R. 546-53).  Most importantly, the post-hearing evidence included a two-page explanation of the medical evidence and reasons underlying Wyche's VA rating.  (R. 552-53).  The Appeals Council considered all of this evidence as expressly stated in its opinion (R. 2, 5-6), but found the evidence did not provide a basis for changing the ALJ's decision, and thus denied review. (R. 1). Importantly, the Appeals Council released its decision on January 29, 2013, more than two months after the Fourth Circuit decided Bird.

Because the Council received all of the new evidence as part of the Administrative Record, this Court must consider the new evidence in evaluating the ALJ's decision.  Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).  In the more detailed rating decision submitted after the hearing, the VA identifies the medical records considered by the

VA in reaching its decision. The rating also includes an explanation of the reasons underlying the VA's decision. Specifically, the rating describes persistent delusions, hallucinations, anxiety, chronic sleep impairment and deficiencies in most areas such as work, school, family relations, judgment, thinking or mood. (R. 553). The decision also specifically enumerated the records relied upon by the VA. None of this explanatory material was before the ALJ. The detailed rating decision notes that a 100% disability, which Wyche received due to his PTSD, is the highest allowed for this condition. (R. 553).

When denying requests for review, the Appeals Council is not required to provide detailed analysis of its conclusion on post-hearing evidence. Meyer v. Astrue, 662 F.3d 700, 706 (4th Cir. 2011); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Damato v. Sullivan, 945 F.2d 982, 988 (7th Cir. 1991). Only when the Council grants review and issues its own decision on the merits do the regulations require it to explain the basis for its decision. Meyer, 662 F.3d at 706 (citing 20 C.F.R. §§ 404.979, 404.1527(f)(3)). Meyer may, however, require remand when the new evidence submitted is not explained and its effect on the record as a whole prevents the reviewing court from

concluding that the ALJ's decision was supported by substantial evidence.

Considering the Fourth Circuit guidance in both <u>Meyer</u> and <u>Bird</u>, the undersigned finds the record does not permit this Court to conclude what weight, if any, was given to Wyche's VA rating of 100% disabled. It is not clear that the ALJ actually knew Wyche was found 100% disabled, as the written record described only the earlier 70% rating. While Wyche did testify he thought the rating would be increased based on a more recent psychiatric visit (R. 53), the ALJ's opinion did not quantify the VA's decision on disability. (R. 28). To the extent the opinion affords his rating only minimal weight, the record as a whole, including the post-hearing evidence, precludes a finding that the ALJ would necessarily have reached the same conclusion on disability in light of the new standard announced in <u>Bird</u>. While the Appeals Council was not required to explain its refusal, "an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review." <u>Meyer</u>, 662 F.3d at 706 (quoting <u>Martinez v. Barnhart</u>, 444 F.3d 1201, 1207-08 (10th Cir. 2006)). The absence of such analysis does not preclude judicial review when "the record provides 'an adequate explanation of [the Commissioner's]'

decision." Meyer, 662 F.3d at 707 (quoting DeLoatche, 715 F.2d at 150). In this case, however, post-hearing changes in the law and the record make it impossible to "determine whether substantial evidence supports the ALJ's denial of benefits". Id.

Lastly, the Commissioner's claim that the Court need not remand because any error would be harmless and remand would not change the outcome on Wyche's disability claim is contradicted by the limited RFC the ALJ did establish for him, as well as the increase in his disability rating after the hearing. "Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." Martin v. Comm'r of Soc. Sec., No. 6:11CV55, 2013 WL 654359, at *5 (W.D. Va. Feb. 1, 2013) report and recommendation adopted, No. 6:11cv55, 2013 WL 645825 (W.D. Va. Feb. 21, 2013). The Fourth Circuit made clear in Bird that a VA disability determination "is the type of evidence that must be considered[] under Social Security Ruling 06-03p." Suggs v. Astrue, No. 4:11CV128FL, 2013 WL 466406, at *4 (E.D.N.C. Feb. 7, 2013). Accordingly, "it is evidence that 'may have a bearing on [the Social Security] determination or decision of disability.'" Id. (quoting SSR 06-03p, 2006 WL 2329929, at *6). The ALJ

28

imposed a restrictive RFC on Wyche limiting him to only occasional interaction with the public, co-workers and superiors.  In addition, testimony from the VE in response to additional questions framed by the ALJ established that if Wyche was off task up to 20% of the day due to his PTSD symptoms, or if he was unable to interact with others due to anger issues, he would be precluded from all work.  The VA determined that Wyche was incapable of working in part due to persistent PTSD symptoms including "difficulty in establishing and maintaining effective work . . . relationships."   (R. 553). Accordingly, its disability determination "may have a bearing" on the Social Security determination, and the undersigned cannot conclude that the ALJ's analysis of the VA disability determination, without considering the new standard, was harmless error.

This is not to suggest that the ALJ's conclusions on RFC could not be sustained under the new standard.  The Fourth Circuit specifically identified the fact that "the SSA employs its own standards for evaluating a claimant's alleged disability" as one ground which may justify deviation from substantial weight.  The ALJ may conclude on the evidence presented by Wyche's case, that those different standards are material to Wyche's claim for disability and justify departing

from the substantial weight presumption.  Other factors may also warrant a different result in the Social Security proceedings. For example, the ALJ may expressly reject a medical opinion relied on by the VA, Valentine v. Comm'r, Soc. Sec. Admin. 574 F.3d 685, 695 (9th Cir. 2009), or consider additional medical evidence that was not before the ALJ.  Id.  In addition, Wyche's substance abuse history, not addressed by the VA but clearly documented in the medical evidence, may affect his eligibility for benefits under the SSA. See 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that this individual is disabled."). But that analysis is for the ALJ to perform in the first instance. After reviewing the detailed rating decision, the undersigned is unable to conclude that the ALJ would have assigned the VA rating minimal weight given this new Fourth Circuit guidance and the detailed post-hearing evidence concerning Wyche's VA disability.  In such circumstances, the appropriate remedy is remand.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DENY the Commissioner's Motion for Summary Judgment

(ECF No. 13), GRANT the Plaintiff's Motion for Summary Judgment (ECF No. 9), and vacate the prior decision and remand the case for further consideration in light of the post-hearing evidence and changes in the law concerning Wyche's VA disability rating, and its impact on this claim for benefits.

### VI.  <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment

31

of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 25, 2014

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Robert Wayne Gillikin , II
Rutter Mills LLP
160 W. Brambleton Avenue
Norfolk, VA 23510

Kent Pendleton Porter
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

_____March 25_____, 2014